# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3469

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Matthew Paul Buesing, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 10, 2010
Filed: August 12, 2010

_____

Before RILEY, Chief Judge, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

RILEY, Chief Judge.

Matthew Paul Buesing pled guilty to one count of possessing and one count of receiving and distributing child pornography, all in violation of 18 U.S.C. §§ 2252(a)(2), (a)(4)(B) and 2. The advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) recommended Buesing serve between 210 and 262 months in prison, but the district court[1] varied downward and sentenced Buesing to two concurrent 120-month sentences. Buesing appeals, arguing his sentence is unreasonable. We affirm.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

### A.    Undisputed Facts

In 2007, law enforcement officers executed a search warrant at Buesing's home in LeClaire, Iowa. The officers were investigating an Internet Protocol (IP) address, which they had traced to the home. Someone at the IP address was using LimeWire[2] to traffic in child pornography. Upon entry, law enforcement officers found Buesing logged onto the only computer in the home. Buesing admitted he was the computer's owner and sole user. Buesing confessed he used LimeWire and possessed approximately 750 to 1,000 images and movies of child pornography in his "shared folder."

Buesing knew his child pornography collection was available to other LimeWire users, because Buesing used LimeWire to find child pornography in others' shared folders. Buesing explained he employed special search terms, such as "Lolita," "pthc" ("preteen hardcore"), and "preteen," to find pornographic pictures and movies depicting girls under the age of 18.

An analysis of Buesing's computer uncovered over 4,000 files. Most files contained images of child pornography. Buesing's collection generally depicted young females sixteen down to nine years old engaged in a sex act with an adult male, including anal penetration and other depraved acts.

In addition to a large stash of child pornography, law enforcement officers found a video tutorial on Buesing's computer describing how to molest your teenage

---

[2]LimeWire is a popular peer-to-peer file sharing program. LimeWire "allows users to search for and share with one another various types of files, including movies and pictures; on the computers of other persons with LimeWire." United States v. Moore, 572 F.3d 489, 491 (8th Cir. 2009) (quoting United States v. Ganoe, 538 F.3d 1117, 1119 (9th Cir. 2008)).

daughter. Elsewhere in Buesing's home, the officers found adult pornography, including DVDs and a magazine, whose titles "referred to young girls."

The National Center for Missing and Exploited Children examined Buesing's collection and discovered three known child pornography series. The identities of Buesing's other victims remain unknown.

### B.    Prior Proceedings

In 2009, a grand jury returned a three-count indictment against Buesing. Count 1 charged Buesing with receiving and distributing child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2. Count 2 charged Buesing with possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2. Count 3 sought forfeiture of Buesing's computer and related equipment under 28 U.S.C. § 2253.

Without a plea agreement, Buesing pled guilty to Counts 1 and 2 and agreed to forfeiture in Count 3. Taking into account the 5-year mandatory minimum sentence on Count 1 and the possibility of consecutive sentences, the statutory range for Buesing's crimes was between 60 and 360 months in prison.

Buesing had no prior criminal record. The United States Probation Office (USPO) calculated Buesing's Guidelines range to be 210 to 262 months imprisonment, based upon a criminal history category I and a total offense level of 37. The USPO found Buesing merited a base offense level of 22 under U.S.S.G. § 2G2.2(a)(2) for his violation of 18 U.S.C. § 2252(a)(2); a two-level increase under U.S.S.G. § 2G2.2(b)(2) for trafficking in material involving a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for distributing a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) because his offense involved material portraying sadistic or masochistic conduct, or other depictions of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for using a computer; a five-level increase under U.S.S.G. § 2G2.2(b)(7)(D) because his offense

involved 600 or more images of child pornography; and a three-level decrease under U.S.S.G. § 3E1.1(a) & (b) for acceptance of responsibility.

At Buesing's sentencing hearing, neither party objected to the USPO's calculation of Buesing's Guidelines range or its recitation of his offense conduct, which included over 7,300 image-equivalents of child pornography.[3] Buesing argued for a sentence at the mandatory minimum, sixty months. The government conceded "the Guideline level is too high," but argued any sentence of "more than ten years" would be appropriate under 18 U.S.C. § 3553(a). The government's attorney previously had "recommended very drastic downward variances in [child pornography] cases because the sentenc[es] are so high" but was "more concerned" with Buesing.

After considering the § 3553(a) factors, the district court found "the Guidelines sentencing system inadequately addresses [Buesing's] circumstances." In rejecting U.S.S.G. § 2G2.2 for policy considerations, see Kimbrough v. United States, 552 U.S. 85, 101 (2007), the district court observed U.S.S.G. § 2G2.2 had received "legitimate criticism" in recent years because the various special offense characteristics thereunder "quickly . . . ratchet[] up" a first-time offender's Guidelines range to the statutory maximum. The district court concluded the Guidelines thereby fail "to differentiate between gradi[ents] of [§ 2252(a)], which there certainly must be."

The district court "weigh[ed] heavily" § 3553(a)(6), the need to avoid unwarranted sentencing disparity among similarly situated defendants. The district court examined the United States Sentencing Commission's statistics regarding U.S.S.G. § 2G2.2 and found "[t]he high volume of downward variances [is] strong

---

[3]Under the Guidelines, "[e]ach video, video-clip, movie, or similar visual depiction shall be considered to have 75 images." U.S.S.G. § 2G2.2 cmt. n.4(B)(ii).

testimony to the fact that the Guidelines cannot be routinely applied in a fair way when it comes to this particular crime."

The district court recognized certain aspects of Buesing's case "aren't routine," however, so the Guidelines remained "an important but not in any way controlling factor to be considered." Although there was no evidence Buesing had attempted to molest any children, the district court found Buesing's large and narrowly focused collection of child pornography evidenced an "obsession" or "fantasy life." The district court characterized Buesing's possession of the incestuous video tutorial as "very disturbing," stating "I just can't imagine the evil that lurks behind the creation of such a video, and the desire to download it and watch it isn't far behind." The district court sentenced Buesing to two concurrent sentences of 120 months imprisonment. Buesing appeals his sentence.

## II. DISCUSSION

Buesing maintains the district court was required to sentence him to a 60-month term, the mandatory minimum sentence on Count 1. Buesing contends his 120-month sentence is procedurally and substantively unreasonable.

### A. Standard of Review

In reviewing a sentence, we engage in a two-part inquiry. We first "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51 (2007). If the district court did not err on any such procedural ground, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id.

We may not presume Buesing's non-Guidelines sentence is unreasonable. See United States v. Braggs, 511 F.3d 808, 812 (8th Cir. 2008). Nor may we reverse simply because "we could reasonably conclude that a different sentence was appropriate." Id. In recognition of the district court's institutional advantages in sentencing, we "afford the district court due deference." United States v. Nguyen, 602 F.3d 886, 896 (8th Cir. 2010).

## B. Analysis
### 1. Procedure

Because Buesing did not lodge any objections in the district court, we review his allegations of procedural error for plain error. See United States v. Deegan, 605 F.3d 625, 629 (8th Cir. 2010).[4] We may grant Buesing relief only if: (1) there was error; (2) the error was clear or obvious; (3) the error affects Buesing's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Marcus, 560 U.S. ___, ___, 130 S. Ct. 2159, 2164 (2010); Fed. R. Crim. P. 52(b).

Buesing argues the district court improperly presumed a sentence within Buesing's Guideline range would be reasonable. Cf. Gall, 552 U.S. at 47 (citing Rita v. United States, 551 U.S. 338, 354-55 (2007)). Recognizing his argument is "difficult" in light of the district court's decision to vary downward, Buesing undertakes an analysis of this particular district judge's prior sentencing decisions to support the conclusion that Buesing's sentence is the product of a "self-created Child Porn Sentencing Guidelines" a/k/a "personal 'porn guideline.'" Buesing represents that, after reading a number of sentencing transcripts and examining the judge's "track record," the district judge "gives lip service" to the law but, in truth, has a "guideline mentality," relies too heavily on § 3553(a)(6), and never "uses [his] discretion in

---

[4]To the contrary, Buesing's counsel praised the district judge at sentencing for "know[ing] [§ 3553(a)] well and all the subsections underneath that."

applying anything NEAR the Congress mandated minimums . . . unless the statutory minimum is 120 months."

We detect no procedural error, plain or otherwise, in Buesing's sentence. Buesing's contention that the district court erred in presuming the Guidelines to be reasonable finds no support in the record. The district court never said it presumed the Guidelines to be reasonable, and its decision to vary downward belies Buesing's suggestion to the contrary. To the extent Buesing argues Kimbrough permits district judges to reject § 2G2.2 on policy grounds, see United States v. Battiest, 553 F.3d 1132, 1137 (8th Cir. 2009) (reserving ruling), the district court was not *required* to reject § 2G2.2 in its entirety or afford § 3553(a)(6) little to no weight. See id.; United States v. O'Connor, 567 F.3d 395, 398 (8th Cir. 2009). To the contrary, the district court was obliged to "take account of sentencing practices in other courts." Kimbrough, 552 U.S. at 108.

### 2.     Substance

Buesing maintains his 120-month sentence is substantively unreasonable. Buesing characterizes his crime as a "'standard' peer to peer child porn distribution" and posits no § 3553(a) factor except § 3553(a)(6) justifies his "draconian" sentence. Among other things, Buesing points out he does not have any criminal history, and thus any inference he poses a danger to molest children is speculative; he did not view many of the images he downloaded and did not access any of the images multiple times; LimeWire, by default, allows file sharing; some of his images of child pornography depict conduct occurring nearly a decade ago; and one of his "victims" is now an adult. Buesing maintains his case is "almost the mirror image" of United States v. Kane, 552 F.3d 748 (8th Cir. 2009), petition for cert. filed ___ U.S.L.W. ___ (U.S. Apr. 6, 2010) (No. 09-10146) and, therefore, reversal is appropriate.

Buesing's sentence is not substantively unreasonable. There are, as the district court found, a number of aggravating factors in Buesing's case, including but not

limited to the size, scope, and nature of his child pornography collection. Buesing's possession of the incestuous how-to manual, viewed in light of his "obsession" and "fantasy life" with young girls, is particularly disturbing. The district court did not err in leaving room at the low end of the statutory range for child pornographers who have less extensive collections of child pornography, whose collections do not include prepubescent children or scenes of violent conduct, or who do not endeavor to learn how to molest their own children.

The district court was not required to vary downward further because some of Buesing's images of child pornography depict decade-old conduct or because at least one of his victims is now an adult. Buesing accepted in his presentence investigation report that he "perpetuated the abuse and degradation of these children through his collection of images and has created a market for this abuse to continue." We reject Buesing's not-so-implicit suggestion—made through his repeated use of quotes around the words "victim" and "victims"—that the children depicted in his child pornography collection are not victims of his crimes. As Congress has recognized, "[t]he illegal . . . distribution, receipt, . . . and possession of child pornography . . . is harmful to the psychological, emotional, and mental health of the children depicted in the child pornography," and "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248 § 501(1)(A) & (D), 120 Stat. 587, 623.

Finally, Buesing's reliance on Kane is misplaced. In Kane, 552 F.3d at 751, the defendant was convicted of aggravated sexual abuse and conspiracy to commit aggravated sexual abuse after she "repeatedly restrained and compelled her nine-year-old daughter to submit to the sexual gratification of a pedophile in exchange for Kane's receipt of $20." The defendant helped the pedophile abuse her daughter approximately twice a week for a total of more than 200 molestations. Id. As here, the district court sentenced the defendant to a 120-month prison term, which

represented a 90-month variance from the bottom of her Guidelines range. Id. at 751, 755. Yet we did not decide in Kane whether the defendant's sentence was substantively unreasonable. We held the district court procedurally erred in basing the defendant's sentence "on clearly erroneous factual findings, relying on [the defendant's] post-sentence rehabilitation, and otherwise failing adequately to explain [an] unusually lenient sentence with sufficient justifications." Id. at 757.[5] Because, as explained above, the district court did not commit any procedural error in fashioning Buesing's sentence, Kane is inapposite.

III. CONCLUSION

We affirm.

_____

[5]We note the Supreme Court recently decided to examine our circuit ban on a district court's consideration of post-sentencing rehabilitation evidence. See United States v. Pepper, 570 F.3d 958, 964-65 (8th Cir. 2009), cert. granted, ___ S. Ct. ___, 2010 WL 2555210 (U.S. Jun. 28, 2010) (No. 09-6822). After Kane was filed, the Solicitor General conceded district courts have discretion to consider post-sentencing conduct. Kane's petition for a writ of certiorari remains pending before the Supreme Court.